Brockenbrough, J.
delivered tlie opinion of the Court.
1. In this case, an Indictment was found against the plaintiff in error, and at the foot of it were written thefu *672 words: te Wm, H. Mien, the witness called on, sworn and sent to the Grand Jury by the Court, on the motion of the Attorney for the Commonwealth. Th: C. Howard, Clk.” The person indicted moved the Court to quash the Indictment, because there is no prosecutor’s name and surname written at the foot of the Indictment, it not appearing from the records of the Court that the said bill of Indictment was sent to the Grand Jury, who found the same in consequence of a previous presentment by a Grand Jury, made on the information of any two of their own body, or the testimony of a witness, called on either by the Court, or the Grand Jury, which motion the Court overruled, although there was no such presentment, and an exception was taken to that opinion of the Court. Whether it was right or wrong, depends on the construction of the 45th, 46 th and 47th sections of the act concerning criminal proceedings. 1 Rev, Code of 1819, p. 611. The first remark to be made is, that this law cannot properly be denominated a penal statute; it neither defines, nor creates any criminal offence, nor prescribes a punishment for one. It merely directs how certain proceedings shall be carried on in trespasses and misdemesnors, preparatory to their introduction into Court. There is no reason why, in construing such an act, we should stick to the letter, nor why we should not carry into effect the obvious intention of Ihe Legislature.
The 45th section provides, that the name and surname of the prosecutor, and the town or county in which he shall reside, with his title or profession, shall be written at the foot of every bill of Indictment for any trespass, or misdemesnor, before it be presented to the Grand Jury; and the 46th section provides, that where the defendant is acquitted, &e. the prosecutor shall be liable for the costs. It seems sufficiently clear, that these two sections apply to the case of a volunteer witness, who, believing that he himself, or some person connected with him has been injured, undertakes of his own accord to invoke the justice *673 »f his country. But, as the motives of men are various, and it is difficult to decide whether a voluntary informer be influenced by a sense of justice, or swayed by a malieious design to oppress, or harass his neighbour, the Legislature thought it proper to guard against the prevalence of this wicked motive, and to prevent vexatious prosecutions, by requiring that the volunteer should be named as prosecutor, and that in case of his defeat he should pay to his adversary his costs. But, there are many offences injurious to public morals and to the public peace, in the punishment of which no individual feels sufficient interest to bring them before the proper tribunals, and unless the functionaries of justice notice them, no restraint will be imposed on their commission. Courts and Grand Juries are conservators of the peace, and guardians of the public morals. Grand Juries are especially required by the sanction of an oath, to present all offences, and presentments are directed to be made on the knowledge of any two of their body; they are thus compelled to be informers, but if for this information they are to be subjected to the payment of costs (in case of the failure of the prosecution,) then there may be reason to fear that they will be induced, contrary to their duty and their oaths, to withhold their information. So, too, the Court or Grand Jury may have good reason to believe that an individual can prove the commission of an offence which ought to be enquired into: he is unwilling to give evidence, but he is commanded by the process of the Court to become a witness: he cannot be called a prosecutor, nor ought he to be subjected to a penalty for doing that which he is compelled to do by the constituted authorities of his country. It was to protect these two classes of involuntary witnesses, that the 47th section was enacted. The first proviso of that section declares, that when a presentment shall be made by the Grand Jury, on the knowledge of two of their own body, or when a presentment shall be made on the testimony of a witness *674 called on either by the Court, or by the Grand Jury, then neither the informing Grand Jurors, nor the witness se called on, shall be liable to costs.
A presentment i n a large sense is an Indictment, for every Indictment is a presentment; the very words of the proviso then include an Indictment made on the testimony of a witness called on by the Court, or by the Grand Jury: and does not the reason of the enactment, include the case of an Indictment ? Can any reason be assigned why the involuntary witness, on whose compulsory evidence an informal presentment is made, should not be deemed a prosecutor, nor liable to costs, while he, on whose compulsory evidence, a formal and regular presentment is made, is to be deemed a prosecutor, and liable to those penalties? Or, could the Legislature have intended to make a difference between the liability of such witness, because in the one case the Grand Jury themselves prepare the charge from his evidence, and in the other case they adopt the charge already prepared for them, and sent to them with the witness ? The Grand Jury may undoubtedly make a presentment in all respects as full and formal as an Indictment preferred by the regular officer of the Court, and the only difference between them in such case is, that the former is signed by the foreman, the latter is endorsed by the foreman, under the words “ a true bill.” Such a minute difference in form cannot make so great a difference in the character and liability of the witness. It has, however, been argued, that as the Legislature used the word presentment in the second proviso of this section, in the restricted sense of a charge prepared by themselves, they ought to be considered as having used it in the same restricted sense in the first proviso, and it is admitted that there is plausibility in the argument: but, as we know that it is legally and technically used in both senses, and as the consequence of so restricting it would defeat the intention of the Legislature, we cannot hesitate in giving it the enlarged meaning.
*675 It cannot be doubted, that it is within the power of «very conservator of the peace, to recognize a person who has committed an outrage on the peace of society, to appear before the next Court to answer an Indictment to be preferred against him, and to recognize the witnesses also to appear and testify. If the construction contended for, by the plaintiff in error, be given to this clause, then if no person is willing to become the prosecutor, one of these two results must happen; either the Indictment cannot be sent to the Grand Jury at all, or the witnesses must first be sent to the Grand Jury to enable them to make a presentment, and then the Indictment being preferred in consequence of the previous presentment, the witnesses must be a second time sent to the Grand Jury to enable them to find the bill. The first would defeat public justice, and render abortive the admitted and useful power belonging to the conservators of t.he peace; the second would procrastinate the proceedings of the Court, and harass the Grand Jury with a double examination, which is totally unnecessary. The Legislature could not have designed that this circuitous route should be taken, when the direct path lay before them. We are of opinion, that the Court were right in refusing to quash the Indictment on this ground. In this opinion, however, two of our brethren (Bouldin and Field) do not concur.
2. The Indictment, which is under the gaming act, charged the defendant with playing at a game called faro, at a house of public resort, &c. The plaintiff in error moved the Court to quash the Indictment, because it has not followed the words of the statute The variance alleged is, that the 5th section of the act prohibits the playing in an ordinary, race-field, or any other public place, which last are not the exact words of the Indictment. The act undoubtedly prohibits the playing at a tavern, which is both an ordinary, and & public place. The 16th section declares, that every house of public resort shall be deemed and taken to be a tavern, within the true intent and mean *676 ing of the act. If the Indictment had charged the playing at a tavern, it would have been good, because a ta» vern is ex vi termini a public place, nor has any authority been shewn to prove, that it would be necessary to lay it un(jer a scilicet. But, a house of public resort is by the law a tavern, and therefore, a public place. The charge is laid in the very words of the 16th section, and is as correct as if laid in the words of the 5th. The Court properly refused to quash on this ground.
3. The defendant then pleaded «/iuterfois acquit, and in his plea he set forth, that he had been presented for the same offence in the same Court, on a day certain, and that on another day certain, at the instance of the Attorney for the Commonwealth, it was ordered, for reasons appearing to the Court, that the said presentment be dismissed; and thereupon, (the plea alleged,) that the said defendant, was discharged, and thereof went thence without day, and he vouched the record. The Attorney for the Commonwealth craved oyer of the record, (which is set out, and shews that the presentment was dismissed by the Court at the instance of the Attorney,) and demurred to the plea. This demurrer brings on the question, whether the dismission of the presentment be an acquittal. In this order for a dis-mission, there is no judgment that he be thereof acquitted, and go hence without day, nor is it believed that there is any mode by which a prisoner, even in case of felony, can be acquitted of the offence with which he stands indicted, unless by the judgment of the Examining Court, or by the verdict of a jury, or the failure to indict him after three terms of the Superior Court have passed. This dismission is an informal Nolle Prosequi, which is never considered in England as an acquittal, (1 Chitty’s Cr. Law, p. 480,) and was so decided here in Lindsay’s Case, 2 Virg. Cas. p. 345. The demurrer was properly sustained.
4. The defendant then pleaded, that he had been presented for the same identical offence in the same Court, and that on a day certain afterwards, the Attorney for the. *677 Commonwealth withdrew the prosecution of the present-merit, and he vouched the record. The Court, on the motion of the Attorney for the Commonwealth, rejected the plea. This Court is of opinion, that the decision was correct for two reasons. 1. Because the record which was vouched, shewed there was no retraxit, but a simple dis-mission, or Nolle Prosequi. 2. Because a retraxit is believed to be unknown to the criminal law, at least as far as it regards a prosecution at the suit of the Commonwealth, although it is used in England in cases of appeal, which is a prosecution carried on at the suit of an individual. As was well observed at the bar, this power of a retraxit is a dispensing power, and the law has not entrusted it to a prosecuting attorney.
5. The defendant also pleaded, that he had been theretofore acquitted of the same offence. This plea is general; does not set forth the Court in which, nor the time when, nor any other circumstance of the prosecution, trial, or acquittal: nor did he vouch the record of the same Court, nor shew the record of acquittal, if of another Court. This was necessary to he done according to the decision in Myers’s Case, 1 Virg. Cas. p. 230. The attorney could do nothing else than what he has done. He could not plead nul tiel record, because no record was vouched or shewn; and it would not have been proper to demur, since he might thereby have admitted the truth of the plea. The Court, according to Myers’s Case, pa. 232, did right to overrule the plea.
For these reasons, the following judgment is to be entered.
This Court is of opinion, and doth decide, that the judgment of the Hustings Court in the record mentioned, ought not to be reversed for any of the reasons set forth in the petition, or appearing in the record; which is ordered to be certified to the Superior Court of Law for Henrico county.